## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PAIN MANAGEMENT CENTERS OF AMERICA, LLC, 820 Town Center Drive, Suite 200 Langhorne, PA 19047 | : : : : : : | |
| Plaintiff, | : : : | Civil Action No. 1:25-cv-00709 |
| v. | : : : | Medicare Appeals Council Docket No.: M-24-4058 |
| ROBERT F. KENNEDY, JR., SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, 200 Independence Avenue, S.W. Washington, DC 20201 | : : : : : : : : | OMHA Appeal Number: 1-13407389907 |
| Defendant. | : : : | |

## COMPLAINT AND REQUEST FOR JUDICIAL REVIEW

Pain Management Centers of America, LLC ("PMCA" or "Plaintiff"), by and through its undersigned counsel, brings this action against Robert F. Kennedy, Jr., in his official capacity as the Secretary of the United States Department of Health and Human Services ("Defendant" or the "Secretary"), alleging as follows:

### I.      NATURE OF ACTION

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act") and the Administrative Procedure Act ("APA"), §§ 551 *et seq.*

2.      This is an action requesting judicial review of the decision of the Medicare Appeals Council, over which this Court has jurisdiction under 42 U.S.C. § 405(g).

3.      The Secretary's final decision was in the form of an Order of the Medicare Appeals Council (the "Decision"). A true and correct copy of the Decision for Appeal Case No.: 1-13407389907, Docket Number: M-24-4058 is attached hereto as Exhibit "A."

4.      Plaintiff is an outpatient pain management provider that treats, among other patient populations, Medicare patients in and around Eastern Pennsylvania.

5.      Plaintiff seeks reimbursement for its fees for services rendered to Medicare beneficiaries from the Centers for Medicare and Medicaid ("CMS"), which is overseen by the United States Department of Health and Human Services ("HHS").

6.      CMS alleges that it overpaid Plaintiff for pain management treatment in the form of spinal cord stimulator implantation services and seeks to recoup that payment, with interest.

7.      Here, Plaintiff seeks judicial review of the Decision finding that the specific spinal cord stimulator implantation services rendered to the Medicare beneficiary at issue in this case (the "Beneficiary") were not covered by Medicare Part B because the record did not establish that a physician reviewed and signed the Brief Battery for Health Improvement ("BBHI2") form of the Beneficiary, which form constituted the requisite psychological evaluation, prior to the permanent spinal cord implantation procedure (the "Procedure").

## II.      JURISDICTION AND VENUE

8.      This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*; and the APA, 5 U.S.C. §§ 551, *et seq.*

9.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1395ff(b)(1)(a), which provides for "judicial review of the Secretary's final decision after [a] hearing as is provided in section 405(g) of this title."

10.      Section 405(g) in turn provides that "[a]ny individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days

after the mailing to him of notice of such decision or within such further time as the [Secretary]

may allow." 42 U.S.C. § 405(g).

11.    Jurisdiction also exists under the APA, 5 U.S.C. § 706(2), which authorizes this

Court to hold unlawful and set aside agency actions, findings, and conclusions found to be

arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, without

observance of procedure required by law, or unsupported by substantial evidence.

12.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1331.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1) because

this case is brought against an officer or employee of an agency of the United States in his official

capacity.

14.    Furthermore, the amount in controversy is more than $1,900.00.

15.    Plaintiff has exhausted its administrative remedies.

### III.    PARTIES

16.    Plaintiff provided outpatient pain management services from its facility in

Langhorne, Pennsylvania.

17.    Plaintiff's primary place of business at all times relevant to this complaint was at

820 Town Center Drive, Suite 200, Langhorne, Pennsylvania 19047.

18.    The Secretary is responsible for the conduct and policies of HHS, including the

conduct and policies of CMS.  Defendant is sued in his official capacity only.

### IV.    PROCEDURAL BACKGROUND

19.    Plaintiff performed the Procedure on the Beneficiary on February 25, 2020, and

submitted a claim for payment to the Medicare program for that care (the "Claim").

20.     According to the initial denial by the Medicare administrative contractor, "[p]ayment for the service was initially allowed; however, a Supplemental Medical Review Contractor (SMRC) determined that the medical record did not support coverage and assessed an overpayment." *See* Exhibit "A" pp. 4-5.

21.     Plaintiff timely filed a Level 1 Redetermination request with Novitas, the Medicare Administrative Contractor for Pennsylvania (the "Redetermination").

22.     On Redetermination, Novitas ruled against Plaintiff on the grounds that the BBHI2 form did not satisfy the requirements of National Coverage Determination for Electrical Nerve Stimulators (160.7) because Novitas believed that the record, specifically, the BBHI2, did not include beneficiary identification or the performing clinician's identification or signature (the "Redetermination").

23.     Plaintiff timely filed a Level 2 Reconsideration request with the Qualified Independent Contractor ("QIC") (the "Reconsideration").

24.     The QIC ruled against Plaintiff on the grounds that the Brief Battery BBHI2 failed to include the Beneficiary's identification or the signature of the performing clinician prior to the Procedure.

25.     Plaintiff timely requested a Level 3 hearing before an Administrative Law Judge ("ALJ").

26.     A consolidated hearing before the ALJ was held on April 26, 2024[1].

---

[1] Plaintiff initially filed requests for redeterminations for fifteen (15) nearly identical claims for fifteen (15) distinct Medicare beneficiaries. One claim was reversed at the Level 2 Reconsideration, two (2) claims were reversed by the ALJ pursuant to the consolidated hearing, and one claim was remanded by the OMHA back to the ALJ for a further hearing.

27.     On June 4, 2024, the ALJ ruled in favor of Plaintiff that the patient identification number on the BBH12 report constituted sufficient patient identification but ruled against Plaintiff on the ground that the record failed to establish the physician reviewed the BBHI2 report and the Beneficiary for the Procedure.

28.     Plaintiff timely filed a Level 4 request for review to the Medicare Appeals Council on August 8, 2024.

29.     The Decision upheld the lower-level findings on the grounds that the record failed to demonstrate that the Procedure was medically reasonable and necessary, and the BBHI2 report does not contain patient identification information or the treating physician's identification or signature.  The Decision determined that Plaintiff is financially liable for the overpayment and constitutes a final determination by the Secretary.

30.     This Complaint, which seeks judicial review of the Decision adopting the ALJ's ruling, followed.

## V.     FACTS

31.     On April 23, 2019, Kevin Brown, M.D, a radiologist providing services at a non-PMCA facility, evaluated the Beneficiary's MRI scan and found multilevel degenerative disc disease, Grade 1 anterolisthesis of L4 on L5, and disc bulges at T12/L1, L1/L2, L2/L3, L3/L4, L4/L5 and L5/S1 in the Beneficiary's lumbar spine.

32.     On April 26, 2019, the Beneficiary presented to PMCA complaining of right lateral lower extremity pain, which had been present since February.

33.     Beginning in May 2019, PMCA treated the Beneficiary with epidural steroid injections, but these treatment efforts only resulted in temporary relief, and the Beneficiary's pain gradually returned to baseline.

34.     At the September 29, 2019 appointment, PMCA's Patrick Fall, D.O., evaluated the

Beneficiary and prescribed a treatment plan to address radiculopathy of the lumbar region, and

chronic pain syndrome.

35.     The Beneficiary completed a BBHI2 psychological assessment on September 26,

2019.  A true and correct copy of the BBH12 is attached hereto as Exhibit "B."

36.     On October 22, 2019, the Beneficiary underwent a spinal cord stimulator trial at

PMCA, which is required prior to the Procedure.

37.     Prior to the Procedure, Dr. Fall reviewed the results of the Beneficiary's BBHI2

assessment and, based on those results, determined the Beneficiary was an appropriate candidate

for the Procedure.  A true and correct copy of the Declaration of Patrick Fall, D.O. is attached

hereto as Exhibit "C" (the "Fall Declaration").

38.     On February 25, 2020, PMCA performed the Procedure on the Beneficiary.

39.     The Decision held that PMCA failed to satisfy the coverage requirements of

National Coverage Determination (NCD) 160.7 (hereinafter "NCD 160.7") and Local Coverage

Determination (LCD): Spinal Cord Stimulation (Dorsal Column Stimulation) (L35450)

(hereinafter "LCD L35450").

40.     NCD 160.7 outlines the "conditions for coverage" and requires that patients

undergo "careful screening, evaluation and diagnosis by a multidisciplinary team prior to

implantation. (Such screening must include psychological, as well as physical evaluation.)"

41.     LCD L35450 sets forth the documentation requirements for payment and requires

that the *medical record documentation* (defined as "all documentation maintained in the patient's

medical record") "must be legible and include appropriate patient identification information (e.g.,

complete name, date of service[s]). The documentation must include the legible signature of the physician or non-physician practitioner responsible for and providing the care to the patient."

42. Neither NCD 160.7 nor LCD 35450 requires that the actual psychological evaluation form (i.e., the BBHI2) include a physician signature.

43. As demonstrated by the Fall Declaration, Plaintiff satisfied the requirements of LCD L35450 through the completion of the BBH12 form by the Beneficiary and Dr. Fall's review of the form prior to the Procedure. *See* Exhibits "B" and "C."

## VI. COUNT I
### Judicial Review Under the APA and Medicare Act

44. Plaintiff incorporates by reference Paragraphs 1-43 as if the same were set forth herein.

45. Plaintiff filed the following four levels of appeal in accordance with CMS regulations: (i) a Level 1 redetermination with the Medicare Administrative Contractor; (ii) a Level 2 reconsideration with the Qualified Independent Contractor (QIC); (iii) a Level 3 Administrative Law Judge (ALJ) hearing at the Office of Medicare Hearings and Appeals (OMHA); and (iv) a Level 4 Medicare Appeals Council Appeal.

46. The Medicare Appeals Council found that the record failed to demonstrate the Procedure was medically reasonable and necessary, and the BBHI2 report failed to include patient identification information or the treating physician's identification or signature.

47. The Decision is a final decision of the Secretary, which permits Plaintiff to now seek judicial review of the same in this Court.

48. The Decision should be overturned because, contrary to the conclusions reached by the ALJ and affirmed by the Medicare Appeals Council, the documentation supporting the Claim

demonstrates Plaintiff satisfied the applicable Medicare regulations prior to the Procedure: (1) Plaintiff completed a valid psychological evaluation of the Beneficiary through the use of the BBHI2; and (2) Dr. Fall, the rendering physician for the Procedure, reviewed the Beneficiary's psychological evaluation.

49.     Dr. Fall signed the Fall Declaration under pains and penalties of perjury attesting that he, the rendering physician, reviewed the BBHI2 prior to the Procedure.

50.     The documentation thus demonstrates that the Beneficiary underwent both the requisite physical and psychological evaluations.  Specifically:

- On September 26, 2019, the Beneficiary completed the BBHI2 questionnaire. *See* Exhibit "B"; and

- Prior to the Procedure, Dr. Fall reviewed the results of the BBHI2 and determined that the Beneficiary was an acceptable candidate for surgery, as evidenced by the Fall Declaration attached hereto.  *See* Exhibit "C."

51.     LCD L35450 requires that "every page of the record … include appropriate patient identification information (**e.g.**, complete name)."  (emphasis added).  The LCD thus does not in fact require inclusion of the patient's complete name; instead, the LCD uses the patient's name merely as one example of appropriate patient identification information.

52.     The Beneficiary's patient identification number, 67917, is included on all six pages of the BBH12.  *See* Ex. "B."

53.     LCD L35450 further requires that the ***documentation*** "include the legible signature of the physician or non-physician practitioner responsible for and providing the care to the patient."

54.     There is no requirement that the actual BBHI2 include a physician signature, as is consistent with the fact that the physical form of the BBHI2 does not include a place for such a signature and the form is not intended to be signed by the reviewer.

55.      Dr. Fall reviewed the results of the Beneficiary's BBHI2 prior to the Procedure, found that the beneficiary was an appropriate candidate for surgery, and, while Dr. Fall did not sign the BBHI2 itself, he did complete and sign the Fall Declaration verifying he completed such a review of the BBHI2.  *See* Exhibit "C."

56.      It is well settled that a provider may rely on a later-completed attestation to add an item to a medical record that the provider did not initially include in that record, as Dr. Fall did in this    instance.      *See*    Complying    with    Medicare    Signature    Requirements    at https://www.cms.gov/mln905364-complying-with-medicare-signature-requirements. ("Attestations may be considered, regardless of their creation date, unless the regulation or policy indicates the signature must be in place before a given event or date.").

57.      Prohibiting providers from correcting and supplementing medical records with later-completed attestations or modifications would lead to absurd results.  Here, most notably, it would mean that the provider would not get reimbursed for clearly medically necessary and appropriate care, and Novitas would be excused from its clear obligation to pay for that care using the premium payments CMS made to it in connection with the Beneficiary.  Those are obviously not the results contemplated by the applicable Medicare law and coverage decisions.

58.      The Decision concedes that every page of the BBH12 Form includes a Patient Identification Number but concludes that "the policy requirements are still not met because the physician is not identified, and the documentation does not contain the physician's signature." Exhibit "A" p. 7.

59.      The BBHI2 form is not intended to be signed by the reviewer, so the Medicare Appeals Council's contention that the BBHI2 form is unsigned is arbitrary and capricious because the signed Fall Declaration and medical record already satisfy the specific signature requirements

of LCD35450.

60.     Therefore, the documentation in this case unequivocally meets the applicable standards for payment.

WHEREFORE, Plaintiff respectfully request an Order setting aside the Medicare Appeals Council's Decision, which is the Secretary's final decision, and finding that requirements for payment were satisfied by Plaintiff, as well as any awarding other relief that this Court deems just and proper.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

Dated:     March 10, 2025

By: /s/ *Natalie M. Brennan*
Natalie M. Brennan, Esquire
Attorney Identification No. 90031537
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Telephone: (215) 665-8700
natalie.brennan@bipc.com
*Attorneys for Plaintiff, Pain Management Centers of America, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Complaint was served on March

10, 2025 upon the following individuals via certified mail:

Robert F. Kennedy, Jr.
Secretary
Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, DC 2021

Sean R. Keveney, Esquire
Acting General Counsel
Department of Health and Human Services
200 Independence Avenue, S.W., Room 713-F
Washington, DC 20201

Edward R. Martin, Jr., Esquire
U.S. Attorney
United States Attorney's Office for the District of Columbia
610 D. Street NW
Washington, DC 20004

Pamela Bondi, Esquire
Attorney General of the United States
U.S. Department of Justice,
950 Pennsylvania Avenue, NW,
Washington, DC 20530-0001

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Natalie M. Brennan*

Natalie M. Brennan, Esquire

*Attorneys for Plaintiff, Pain Management Centers of America, LLC*